**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

Patent Compliance Group Inc.,
Relator,

CASE NO. 3-10CV0359-P

v.

**JURY TRIAL DEMANDED**

Hunter Fan Co.,
Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)**

Michael D. Pegues
Texas Bar No. 15730600
Jason A. Wietjes
Texas Bar No. 24042154

OF COUNSEL:
Dorian B. Kennedy
Georgia Bar No.: 414385
L. Clint Crosby
Georgia Bar No. 197877
Adam S. Baldridge
Tennessee Bar No. 23488

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND FACTUAL BACKGROUND ................................................... 1

II. ARGUMENT AND AUTHORITIES ................................................................................ 2

    A. This Action Could have Been Brought in the Western District of Tennessee ............................................................................................................. 3

    B. Convenience and the Interests of Justice Heavily Favor Transfer of this Case to the Western District of Tennessee ............................................................ 3

        1. Private Interest—Relative Ease of Access to Sources of Proof ................. 4

        2. Private Interest—Availability of Compulsory Process of the Witnesses ...................................................................................................... 5

        3. Private Interest—Cost of Attendance for Willing Witnesses .................... 6

        4. All of the Relevant Public Interests Favor Transfer to the Western District of Tennessee ..................................................................... 8

III. CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*AT&T Intellectual Property I, L.P. v. Airbiquity, Inc.*,
  No. 3:08-cv-1637-M, 2009 WL 774350 (N.D. Tex. Mar. 24, 2009)......................................13

*Enplanar, Inc. v. Marsh*,
  11 F.3d 1284 (5th Cir. 1994) ...............................................................................................10

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947).................................................................................................................6

*In re Horseshoe Entertainment*,
  337 F.3d 429 (5th Cir. 2003) ..................................................................................................8

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*,
  No. 3:09-CV-0488-D, 2009 WL 2634860, at *8 (N.D. Tex. Aug. 26, 2009) ...................12, 13

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)..................................................................................................................5

*Research in Motion Ltd. v. Visto Corp.*,
  No. 3:06-CV-0783-D, 2007 WL 1452092 (N.D. Tex. May 17, 2007)...............................10, 11

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)..................................................................................................................5

*Veba-Chemie A.G. v. M/V Getafie*,
  711 F.2d 1243 (5th Cir. 1983) ............................................................................................5, 6

*In re Volkswagen of America Inc.*, 545 F.3d 304 (5th Cir. 2008)..............................5, 6, 7, 8, 9, 11

**STATUTES**

28 U.S.C. § 1391(a)(2)....................................................................................................................6

28 U.S.C. § 1404(a) ...........................................................................................4, 5, 6, 7, 10, 11, 13

35 U.S.C. § 292...............................................................................................................................7

**OTHER AUTHORITIES**

17 MOORE'S FED. PRACTICE, § 111.12 (1998) ...............................................................................6

Defendant Hunter Fan Company ("Hunter") files its Memorandum in Support of Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) as follows:

## I.  INTRODUCTION AND FACTUAL BACKGROUND

While venue in this District may be permissible, the Western District of Tennessee is the significantly more convenient forum to litigate the issues in this case. Patent Compliance Group, Inc. ("PCG") has sued Hunter on behalf of itself and the United States in a *qui tam* action for alleged false patent marking relating to some of Hunter's thermostat products. Because a false patent marking suit seeks to impose liability on the patent owner for its alleged marking of its products, the actions of the patent owner, here Hunter, are the primary, if not entire, focus of this litigation. In fact, in a *qui tam* false marking suit, the plaintiff's conduct is virtually irrelevant to the claims in the case by virtue of the focus on the defendant patentee. Accordingly, by the very nature of a false patent marking suit, all of the evidence relevant to this case is located at Hunter's facilities.

Hunter is a manufacturer and distributor of home comfort products, such as thermostats, ceiling fans, humidifiers, portable fans, lighting fixtures, vaporizers, and components. (Ex. A-Affidavit of Daniel E. Rowton ¶ 2.) Hunter is located in Memphis, Tennessee, and has been since 1946. (Rowton Aff. ¶ 2.) While Hunter has suppliers located in Asia, Hunter's operations are conducted in Tennessee from its facilities located in Memphis. (Rowton Aff. ¶ 5.) As a result, virtually all of the documents relevant to the claims in PCG's Complaint are located in the Western District of Tennessee. (Rowton Aff. ¶ 4.) Further, the witnesses likely to have testimony relevant to this case are located in the Memphis area. (Rowton Aff. ¶¶ 6, 9.) Finally, Memphis has strong local interests in having this case decided in the Western District of Tennessee as Hunter employs over 250 employees in the Memphis area. (Rowton Aff. ¶ 2.)

Accordingly, because the focus of this case must necessarily be on Hunter, because Hunter is located in the Western District of Tennessee, and because all of Hunter's documents and witnesses are located in Memphis, Hunter requests that this Court transfer this case to the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C § 1404(a). A transfer to the Western District of Tennessee would allow the parties to litigate this suit in a venue which is substantially more convenient for the parties and the witnesses and in the interests of justice.

## II.     ARGUMENT AND AUTHORITIES

Hunter urges this Court to transfer venue pursuant to 28 U.S.C. § 1404 to the Western District of Tennessee because the convenience of the parties, the convenience of the witnesses, and the interest of justice require such a transfer. Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (Section 1404(a) was enacted to allow "easy change of venue within a unified federal system."); *Veba-Chemie A.G. v. M/V Getafie*, 711 F.2d 1243, 1246 (5th Cir. 1983) (same).

The purpose of the venue transfer statute is to "prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted). Moreover, because Hunter merely seeks a transfer of venue under § 1404(a) and not a dismissal under the doctrine of forum non conveniens, the burden for such a transfer is less. *In re Volkswagen of Am. Inc.* (*Volkswagen*), 545 F.3d 304, 313 (5th Cir. 2008) ("[T]he burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a forum non conveniens dismissal."). "[T]he statute requires only that the

transfer be '[f]or the convenience of the parties, in the interest of justice.'" *Id.* (quoting *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d at 1247).

Section 1404(a) empowers a transfer of venue to another federal forum if two requirements are met:

1. The proposed transferee district must be one in which the action "might have been brought" originally; and

2. The Court must determine that transfer of the action will enhance the convenience of the parties and witnesses, and is in the interest of justice.

17 MOORE'S FED. PRACTICE, § 111.12, p.111-53 (1998).  Both of these requirements are easily satisfied in this case.

### A. This Action Could have Been Brought in the Western District of Tennessee

Clearly, in this case, venue would be proper in the Western District of Tennessee as Hunter is located within that District and is subject to personal jurisdiction there. *Volkswagen*, 545 F.3d at 313 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). Additionally, there can be little question that, by virtue of a claim for false patent marking and Hunter's location in Memphis, Tennessee, almost all or certainly a "substantial part of the [alleged] events or omissions giving rise to the claim" occurred in the Western District of Tennessee. *See* 28 U.S.C. § 1391(a)(2).  Therefore, the first requirement of a § 1404(a) transfer is easily met.

### B. Convenience and the Interests of Justice Heavily Favor Transfer of this Case to the Western District of Tennessee

In ruling on a motion to transfer under § 1404(a), the Court considers the private and public interests outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See Volkswagen*, 545 F.3d at 315 ("[W]e have adopted the private and public interest factors first enunciated in [*Gulf Oil*], a forum non conveniens case, as appropriate for the determination of whether a § 1404(a)

venue transfer is for the convenience of parties and witnesses and in the interest of justice."). The private interest factors recited by the Fifth Circuit include: "(1) relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*

The public interest factors consider: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Id.*

All of the relevant private and public interest factors weigh heavily in favor of finding that the Western District of Tennessee is a significantly more convenient venue for this lawsuit and that transferring this case is in the interest of justice.

### 1.   *Private Interest—Relative Ease of Access to Sources of Proof*

The first private interest factor weighs heavily in favor of transferring this case to the Western District of Tennessee. With respect to the first criterion, virtually all of the proof relevant to this suit is located in the Western District of Tennessee where Hunter is located and operates its business. *See Volkswagen*, 545 F.3d at 316 ("[T]his Court has recently reiterated that the sources of proof requirement is a meaningful factor in the analysis.").

Hunter maintains its production, packaging, and distribution facilities in the Memphis area, and maintains its records there. (Rowton Aff. ¶ 4.) Moreover, all documentation regarding Hunter's patents and its product packaging displaying the patent markings are located in Memphis. (Rowton Aff. ¶ 4.) Furthermore, as discussed more fully below, most, if not all, of Hunter's witnesses are located in Memphis, Tennessee. Because false patent marking is a claim which almost solely focuses on the defendant's alleged actions or omissions, *see* 35 U.S.C. §

292, evidence related to the defendant, here Hunter, is the most likely source of proof in an action for false patent marking.

Furthermore, PCG brings this action as a *qui tam* action on behalf of the United States. While PCG is a party to this action, PCG will likely have little, if any, discoverable information which is relevant to this case. Unlike the volumes of information maintained by Hunter in Tennessee which may be relevant to this suit, PCG's actions or omissions are of little significance to the case. In fact, PCG is likely to have very few, if any, documents which may be relevant to this suit.

This District simply has no specific relationship to this case. The Fifth Circuit in *Volkswagen*, in reasoning that transfer was appropriate, noted that "[a]ll of the documents and physical evidence relating to the accident are located in" the transferee district. *Volkswagen*, 545 F.3d at 316. Likewise, here, all of Hunter's documents and physical evidence are located in Memphis, Tennessee. Accordingly, the location of the sources of proof factor weighs strongly in favor of transferring this case to the Western District of Tennessee. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (reversing the district court's denial of a motion to transfer, and holding "[w]e think the Middle District Court erred in not giving significance to 'the factor regarding the location of books and records.'").

        **2.**    *Private Interest—Availability of Compulsory Process of the Witnesses*

The affidavit evidence introduced by Hunter indicates that virtually all of the witnesses with knowledge of the circumstances surrounding the claims in PCG's Complaint live and work outside the State of Texas except for PCG itself. (Rowton Aff. ¶¶ 6, 9). While many of the witnesses likely to testify in this action are employed by Hunter, Hunter will likely call former employees who have knowledge of PCG's claims but are no longer within the control of Hunter. For example, Gary Feder, a former Vice President of Home Comfort Products for Hunter from

approximately 1999 to 2009, has knowledge regarding product packaging for home comfort products, including Hunter's patent marking practices during his period of employment. (Rowton Aff. ¶ 9.) Although Mr. Feder is no longer employed by Hunter, he still resides in the Memphis, Tennessee area. (Rowton Aff. ¶ 9.) Because Mr. Feder lives in Memphis he is beyond the compulsory process of this Court.

In contrast, if this case were transferred to the Western District of Tennessee, potential third-party witnesses located in Memphis would be subject to the Western District's subpoena power for deposition and trial. In *Volkswagen*, the Fifth Circuit, in finding this factor favored transfer, noted the importance and convenience afforded by a venue "enjoy[ing] absolute subpoena power for both depositions and trials." *Volkswagen*, 545 F.3d at 316 (noting the transferor venue lacked "subpoena power for deposition under Fed. R. Civ. P. 45(c)(3)(A)(ii), and any trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3)").

Furthermore, in contrast to the likelihood that former Hunter employees located in Memphis will provide testimony through deposition or trial in this matter, PCG is not likely to call a single third-party witness who is located in this District. Consequently, this factor heavily favors a venue transfer to the Western District of Tennessee.

### 3.   *Private Interest—Cost of Attendance for Willing Witnesses*

The Affidavit of Daniel Rowton substantiates that the Western District of Tennessee is the most convenient forum for the witnesses because a significant number of Hunter's witnesses reside in Tennessee, such that it would be unduly costly—both in terms of expense and lost productivity—for Hunter to bring its witnesses to Texas to testify at trial. (*See* Rowton Aff. ¶¶ 6, 7, 9.) It is anticipated that virtually all, if not all, of the witnesses that Hunter will call to testify at the trial reside in Memphis or the surrounding area. (*See* Rowton Aff. ¶¶ 6, 9.) This is

important not only for purposes of the trial, but also because the location of witnesses and evidence "necessarily implicate[s] the ease of conducting merits-related discovery in a location which is near the relevant witnesses and documents." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994).  Moreover, "[t]he availability and convenience of witnesses has been held to be the most significant factor in deciding a § 1404(a) motion to transfer." *Research in Motion Ltd. v. Visto Corp.*, No. 3:06-CV-0783-D, 2007 WL 1452092, at *3 (N.D. Tex. May 17, 2007) (citations omitted).

Hunter anticipates calling as witnesses on its behalf the following individuals, almost all of whom reside in or around Memphis, Tennessee:  Chuck Smith, Hunter's President and Chief Executive Officer; Charles Turner, Hunter's Chief Financial Officer; Daniel Rowton, Vice President of Engineering, has knowledge regarding Hunter's patent marking practices; Erich Schroeder, Product Manager for Thermostats, has knowledge of Hunter's market research, consumer research, product development, and product packaging of its thermostat products; Michael Ritter, Senior Vice President of Operations, has knowledge of Hunter's supply, sourcing, customer service, and quality control for thermostat products, as well as other products; Jim Gallman, Senior Vice President of Home Environment and Brand Marketing, has knowledge of Hunter's product packaging and patent marking practices; Andy Lin, Engineering Manager for Thermostats and Portable Fans, is involved in the engineering and design of Hunter's thermostat products; and April Melton, Assistant Brand Manager, is responsible for Hunter's product packaging and product catalogs.  (*See* Rowton Aff. ¶ 9.)

The testimony of these individuals is critical to Hunter because such testimony would support its defenses against PCG's claims of false patent marking, particularly that Hunter does not and has never intended to deceive the public through any patent markings on its product

packaging. Furthermore, Dallas is almost 500 miles away from Memphis, Tennessee. Thus, if this case goes forward in this District, these witnesses will incur significant monetary costs for travel and lodging as well as personal costs of being away from work, family, and community. *Volkswagen*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community.").

On the other hand, PCG is likely to call very few, if any, witnesses to testify at trial in this case. As noted above, the primary focus of this *qui tam* false marking suit will not be on PCG, but instead on Hunter.

Accordingly, (1) the cost of attendance for Hunter's witnesses, (2) the severe burden and business interruption on Hunter to have many of its key employees travel to and testify in Texas, and (3) the lack of any burden on PCG in having very few, if any, witnesses testify in Tennessee weigh heavily in favor of this case being transferred to Tennessee. *See Research in Motion Ltd.*, 2007 WL 1452092, at *3 (holding that the convenience of witnesses is "the most significant factor").

### 4. *All of the Relevant Public Interests Favor Transfer to the Western District of Tennessee*

All of the relevant public interest factors support a transfer under § 1404(a). Because only federal patent related claims have been asserted in this action, there are no problems related to conflict of laws or of one forum having unfamiliarity with the law. *See Volkswagen*, 545 F.3d at 317. Indeed, it is important to note that Texas law will not govern any of the disputes in this case. Furthermore, the administrative difficulties flowing from court congestion would seem to be neutral or possibly favor a transfer to the Western District of Tennessee based on the volume of cases filed in this District.

Moreover, the most relevant public interest factor of having local interests decided locally weighs in favor of transfer. The people in the Western District of Tennessee have a strong interest in having this case decided in Memphis, Tennessee. Hunter's facilities are located in Memphis and have been since 1946. (Rowton Aff. ¶ 2.) Also, Hunter employs over 250 employees in and around the Memphis area. (Rowton Aff. ¶ 2.) Additionally, all of the products and product packaging alleged to have been falsely marked were developed and designed in Memphis, Tennessee and distributed from the Memphis area. (Rowton Aff. ¶ 3.)

Indeed, the Fifth Circuit's reasoning in *Volkswagen* in instructive of the importance of having local interests decided locally. In *Volkswagen*, the court noted that because the evidence was located in the transferee district, the witnesses were employed and located in the transferee district, and third-party defendants as well as some of the plaintiffs were located in the transferee district, the local interest of the transferee court heavily favored transfer of the action. *Volkswagen,* 545 F.3d at 317 (holding that the only contested public interest factor—the local interest in having localized interests decided at home—weighed "heavily in favor of transfer").

Likewise, in *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, this Court found significant that (1) the defendant's facilities were located in transferee state, (2) the defendant had recently built an expensive facility in the transferee district, (3) the defendant employed over 200 people in that location, and (4) the infringing product was designed and developed in the transferee state. *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC* (*Kimberly-Clark*), No. 3:09-CV-0488-D, 2009 WL 2634860, at *8 (N.D. Tex. Aug. 26, 2009) (noting "the local interest is substantially found in the [transferee district]").

Like the local interests in *Volkswagen* and *Kimberly-Clark* which favored transfer, the local interests in this case strongly favor transfer to the Western District of Tennessee. Because

of the unique nature of a false patent marking case, the entire focus of this litigation, as well as the proof at trial, will be on Hunter and its actions. *See* 35 U.S.C. § 292(a). Thus, the local interests of the Western District of Tennessee, where Hunter is located, greatly outweigh any interests of having this case decided in this District. *See Kimberly-Clark*, 2009 WL 2634860, at *8 (citing *AT&T Intellectual Prop. I, L.P. v. Airbiquity, Inc.*, No. 3:08-cv-1637-M, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (holding the residents of Washington had local interest in outcome of case because defendant "was based [there], and most, if not all, of its witnesses, evidence and business operations are there"). Accordingly, the Court should find that the local interests of the Western District of Tennessee strongly weigh in favor of a transfer.

### III.    CONCLUSION

Because the convenience of the parties and witnesses and the interests of justice favor transferring this case, Hunter respectfully requests that this Court transfer this case to the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

s/Michael D. Pegues
Michael D. Pegues
Texas Bar No. 15730600
michael.pegues@bgllp.com
Jason A. Wietjes
Texas Bar No. 24042154
jason.wietjes@bgllp.com
BRACEWELL & GIULIANI LLP
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202
214-468-3800 (telephone)
214-468-3888 (facsimile)

OF COUNSEL:
Dorian B. Kennedy
Georgia Bar No.: 414385
L. Clint Crosby
Georgia Bar No. 197877
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
3414 Peachtree Road, N.E., Suite 1600
Atlanta, GA 30328
404-577-6000 (telephone)
404-221-6501 (facsimile)

Adam S. Baldridge
Tennessee Bar No. 23488
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Ave., Suite2000
Memphis, Tennessee 38103
901-526-2000 (telephone)
901-577-0838 (facsimile)

COUNSEL FOR DEFENDANT HUNTER FAN CO.

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was served upon all counsel of record via the Court's electronic filing notice this 8th day of April, 2010.

s/Michael D. Pegues